Dear Mr. Morgan:
You have requested an opinion on several legal issues relative to the leasing, for surface use, of state owned lands under LSA-R.S. 41:1217(A). Specifically, you pose the following issues for our review:
 (1) What is the maximum number of years, including primary and renewal terms, that state owned lands may be leased without further public bid?
 (2) Considering the ten year limitation on primary terms under Section 1217(A), may the State Land Office grant renewal of three year leases without submitting the property to the bidding process?
 (3) Is a surface lessee, whose improvements are destroyed by natural forces, entitled to favorable treatment relative to lease renewals or extensions?
 (4) May a lessee, whose lease has terminated, remove any improvements constructed on the property?
PRELIMINARY REMARKS
The structure and content of LSA R.S. 41:1217(A) show a clear effort by the legislature to balance the concerns of keeping state lands available for public use, while encouraging private parties to improve their lease properties. The statute, in furtherance of this goal, imposes term limits on primary terms, but grants extensions to those lessees who construct improvements. R.S. 41:1217 is not the exclusive law relating to state leases, but only applies in the context of the general laws relating to the letting out of things as found in the Civil Code Article 2676, et seq and elsewhere. Therefore, where R.S.41:1217 does not specifically address a particular situation, resort must be made to other sources for the applicable law.
MAXIMUM TERMS, INCLUDING RENEWALS
Section 1217(A) provides a ten year limit on the primary term of a surface lease. No provision is made for the extension or renewal of the lease in the absence of any improvements to the property. Therefore, unimproved property must be rebid at the end of the primary term. Subparagraphs (A1) and (A2) provide for lease extensions by those lessees who improve the lease property. These provisions favor the lessees increasingly as the value of the improvements increase. Subparagraph (A1) provides for a simple extension of ten years for any lessee who constructs permanent improvements, during the primary term, of at least $2,000.00, but not exceeding $10,000.00.
Subparagraph (A2) provides much more favorable consideration for lessees who construct more elaborate improvements. Construction of improvements valued at greater than $10,000.00 during the primary or first renewal term are entitled to extensions of ten years for each $10,000.00 spent, for a total of twenty (20) years. However, if the improvements total $150,000.00 in value, the lessee is entitled to a thirty (30) year extension.
Taken as a whole, the foregoing provides a total of fifty (50) years occupancy to a lessee, under optimum conditions. Such a term would occur where a lessee signed a ten year initial lease, gained a ten year extension by constructing improvements of $2,000.00 to $10,000.00 then, during the first renewal term constructing further improvements in excess of $150,000.00
THE EFFECT OF PRIMARY TERMS OF LESS THAN TEN YEARS
The statute makes no provisions for extensions or renewal of short leases without public bid, even where the primary and renewal time taken together would equal less than ten years. Furthermore, I find no cases which address this matter. However, considering the public interest aspects of returning land to the public, and further considering the fact that the lessee may gain a ten year extension by simply expending $2,000.00 on the property, I can suggest no good reason for departing from the stated requirements of the statute.
DESTRUCTION OF IMPROVEMENTS
Neither the public lease statute, nor the civil code lease laws provide for any favorable treatment of lessees whose improvements have been destroyed by natural causes. Since the lessee may insure against any such risks, and since there is no requirement that the State, as lessor, bear the consequences of a natural disaster, there is no basis in either logic or fairness for such favorable treatment of a lessee. Loss of improvements toward the end of the principle or renewal term need not adversely affect the lessee, since the statute in all cases provides that for the renewal provisions to apply, the improvements must be "made or contracted for" by the termination date. Therefore, in such a case, the lessee would need only offer proof that he actually intended to replace the improvements, and had contracted for same in order to avail himself of the renewal provisions.
REMOVAL OF IMPROVEMENTS
LSA-R.S. 41:1217(A)(3) squarely addresses the issue of removal of improvements, affording to the lessee the right to remove any and all improvements within 90 days of the termination of the lease. Parenthetically, I note that this provision is in accord with the general law of lease as set forth in the Louisiana Civil Code. Civil Code Article 2726
states that the right to remove improvements is governed by Article 493 and other articles. Article 493 provides, in pertinent part that;
 when the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within 90 days after written demand, the owner of the land acquires ownership of the improvements and owes nothing to their former owner. ***
Therefore, the ownership of any improvements remaining on the property 90 days after the termination of the lease inures to the state, and the former lessee has no further rights therein.
I hope the above and foregoing adequately addresses your concerns. Should you have any further questions or require clarification of the above discussed issues, please do not hesitate to contact this office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: CHARLES ST. DIZIER Assistant Attorney General
CSD/scp